# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| Henry G. Denson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 C 5661 |
| -vs- | ) | |
| | ) | Senior U.S. District Judge |
| | ) | GEORGE W. LINDBERG |
| Michael J. Astrue, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Henry Denson ("plaintiff") seeks judicial review of a final decision of defendant Commissioner of Social Security Michael Astrue denying him Social Security Disability Insurance Benefits ("DIB"). The parties have filed cross motions for summary judgment. For the reasons stated below, the Commissioner's decision is affirmed. See 42 U.S.C. § 405(g).

Plaintiff filed for DIB on May 7, 2004. The alleged onset date of his disability, for tarsal tunnel syndrome, is August 18, 2003. Plaintiff underwent several surgeries from 2003-2005 on his right foot to correct hammertoe, tarsal tunnel syndrome, and neuromas. He has continued to receive treatment from a number of doctors for ongoing foot pain and mobility issues, and received physical therapy to address these problems from October of 2003 to January of 2004.

Plaintiff graduated from high school and has four years of college, though he did not receive a degree. Prior to the onset of his injuries he worked as a copier technician, traveling to offices and repairing fax and copier machines. Plaintiff stated in his work history report to the Social Security Administration that this job required him to walk for about 2 hours a day, and stand, sit, climb, stoop, kneel, and crouch for about 1 hour each. He also stated that he had to

reach and frequently lift 25 pounds a day.

Plaintiff's treating physician, Dr. Horak, diagnosed plaintiff as suffering from regional pain syndrome. Dr. Horak stated in response to an interrogatory that plaintiff could stand or walk for fifteen minutes at a time, sit for eight hours in an eight hour workday, occasionally lift up to seventy pounds, frequently lift from five to twenty pounds, and bend from a sitting position. Dr. Horak also stated that plaintiff would have marked limitation in completing a normal workday and workweek, would have difficulty performing at a consistent pace without an unreasonable number and length of rest periods, and would experience deficiencies in sustaining concentration, persistence, and pace due to symptoms related to his condition. Dr. Horak recommended that plaintiff be found disabled.

In September of 2004, plaintiff was examined by Dr. Rabinowitz at the request of Illinois Department of Human Services Disability Determination Services. He also underwent two Physical Residual Functional Capacity Assessments ("PRFCA"), one in September 2004, and another in January 2005. Dr. Rabinowitz confirmed that plaintiff had undergone several surgeries on his right foot and was still experiencing pain from the surgeries. He also noted that plaintiff could not walk further than 10 feet without an assistive device for reasons which were "unclear given the objective findings present."

At plaintiff's first PRFCA, a state medical consultant, Patey Robert, found that plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour work day, and had no established postural, manipulative, visual, communicative, or environmental limitations. At this initial PRFCA, the medical consultant also found plaintiff was suffering from chronic regional

pain. At plaintiff's second PRFCA, the medical consultant, Madala Vidya, found that plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for about two hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and had no established manipulative, visual, communicative, or environmental limitations. Postural limitations included never climbing a ramp or stairs or crawling, and occasionally climbing a ladder/rope/scaffolds, balancing, stooping, kneeling, or crouching. At this second PRFCA, the examining medical consultant noted that Dr. Horak's report was consistent with the medical consultant's finding that plaintiff was limited to sedentary work activity.

Dr. Miller, a medical expert ("ME"), testified that he was skeptical of Dr. Horak's diagnosis of regional pain syndrome, because he doubted Dr. Horak's ability to make such a specialized diagnosis and felt it was unsupported by the notes of Dr. Horak's examinations. He stated that he did not think plaintiff's medical conditions met or equaled a disability listed in Appendix 1 to subpart P of 20 C.F.R. §404. He stated that he believed plaintiff's medical condition would limit his functional capacity to stand for long periods of time and bear weight. Dr. Miller testified that he believed this limitation was a result of residual pain from plaintiff's surgery, and that it would not prevent him from sitting and working with occasional walking.

Plaintiff testified at the hearing that he was unable to crouch or get down on his hands and knees. He stated that from a sitting position he could lift no more than five pounds and from a standing position could lift and carry no more than two pounds. Plaintiff stated that he could move his foot and rotate his ankle, but with severe pain. He stated he could stand and bear weight for no more than ten minutes, and while seated had to elevate his foot and alternate heating and icing the foot. He also stated that after about an hour of sitting he would need to

stand to initiate circulation in his right foot.

It is well-established that "[c]ross-motions for summary judgment are the standard method for presenting a case to a district court for decision on the record compiled by the administrative tribunal that the court is reviewing." *Dale M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307,* 237 F.3d 813, 816 (7th Cir. 2001). This court may affirm, modify, or reverse the decision of the Commissioner of Social Security, with or without remanding the case for rehearing. 42 U.S.C. § 405(g). When reviewing the Commissioner's decision, this court must determine if the decision is supported by "substantial evidence." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although this court applies a deferential standard to the Commissioner's decision, and may not reweigh evidence, resolve conflicts, decide credibility questions, or substitute its judgment for that of the Commissioner, the review must be more than an uncritical rubber stamp. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "Under this standard, the ALJ's decision, if supported by substantial evidence, will be upheld even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

A five-step sequential evaluation process is used to determine whether a claimant is disabled. (1) If the claimant is doing any substantial gainful activity, he will be found not disabled. (2) If the claimant does not have a severe impairment that meets the duration requirement in 20 C.F.R. § 416.909, he will be found not disabled. (3) If the claimant does not have an impairment that meets or equals one of the disabilities listed in Appendix 1 to subpart P

of 20 C.F.R. § 404, he will be found not disabled. (4) If the claimant given his residual functional capacity ("RFC") is able to do his past relevant work, the ALJ will find he is not disabled. (5) If the claimant, in light of his RFC, age, education, and work experience, is able to adjust to other work, he will be found not disabled. 20 C.F.R. § 416.920; *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If at any step a conclusive finding that the claimant is or is not disabled is made, no further step need be considered. 20 C.F.R. § 416.920.

The ALJ found at steps one through four, that: 1) plaintiff had not engaged in substantial gainful activity, 2) plaintiff had a severe impairment, 3) plaintiff's impairment did not meet or equal a listed disability, and 4) that plaintiff was unable to return to his past relevant work. The ALJ determined plaintiff was not disabled at step five of the evaluation process.

At step five, an ALJ must first determine a claimant's RFC based on "the functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments." Social Security Ruling 96-8p. This determination will include consideration of things like medical history, medical signs and laboratory findings, lay evidence (such as the claimant's testimony), recorded observations, and medical source statements. SSR 96-8p. The RFC is not the least that an individual can do, but the most. SSR 96-8p. When weighing medical evidence, opinions from a treating physician are generally given more weight. *Clifford*, 227 F. 3d at 870; 20 C.F.R. § 404.1527(d). Findings of fact by state agency medical consultants are given the weight of non-treating, non-examining physicians' opinions. SSR 96-6p. When weighing a claimant's testimony, an ALJ is permitted to assess his credibility by evaluating how much the objective medical evidence supports the subjective testimony of the claimant about both his symptoms and their functional effects. *Rice v. Barnhart*, 384 F.3d 363,

371 (7th Cir. 2004); SSR 96-7p. An ALJ must give "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. As the Seventh Circuit stated in *Prochaska v. Barnhart*, "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported can the finding be reversed." 454 F.3d 731, 738 (7th Cir. 2006) (citation omitted).

"An RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence." SSR 96-8p. However, while an ALJ must build a logical bridge between his conclusions and the evidence, "the ALJ need not provide a complete written evaluation of every piece of testimony and evidence." *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Once an ALJ has made an RFC assessment, the ALJ uses the functional limitations in the RFC to determine whether the claimant can adjust to work other than his previous work. This determination may be based on resources like the Department of Labor's *Dictionary of Occupational Titles* (4th Edition 1991) ("DOT"), and may also be based on the testimony of vocational experts ("VE") and vocational specialists ("VS") on such issues as the degree to which a range of work (sedentary, light, medium, heavy, very heavy) may have been eroded by claimant's further limitations. SSR 00-4p, 96-9p. An ALJ may rely on the testimony of a VE regarding a hypothetical claimant of the same age, education, and work experience, as claimant, and having a series of hypothetical limitations derived from the RFC assessment of claimant. The VE then testifies about claimant's ability to return to past relevant work, or ability to adjust

to other work. The hypothetical limitations posed to a VE ordinarily must include all limitations supported by medical evidence in the record. *Young*, 362 F.3d at 1003. Moreover, in posing hypotheticals to the VE, an ALJ must "consider the combined effects of all . . . impairments without regard to whether any such impairment, if considered separately, would be of insufficient severity." 20 C.F.R. § 404.1523.

When employing a VE, "the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." SSR 00-4p. An ALJ has a further obligation to resolve any conflicts between the jobs given by the VE and the DOT:

> [B]efore relying on VE or VS evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT) . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved.

SSR 00-4p; *see Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006).

> When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the *Dictionary*'s . . . . If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry . . . to find out whether the purported expert's conclusions are reliable.

*Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). "An expert is free to give a bottom line, provided that the underlying data and reasoning are available on demand." *Id*.

To make his step five determination, the ALJ in this case first found plaintiff retained the RFC:

> [T]o perform a reduced range of sedentary exertional level work. Based on the claimant's right foot pain and restriction of bearing weight, he is limited in the ability for lifting and carrying of objects weighing more than five pounds. The claimant also

07 C 5661

> requires a sit/stand option as needed, and the need for icing his right foot for an hour at a time, due to the residual foot pain, Postural limitations involve the avoidance of performing tasks requiring bending, crouching, crawling. Environmental limitations include the avoidance of exposure to dust, molds, and pet dander due to allergies.

This RFC finding was appropriately supported by evidence before the ALJ. For example, the postural limitations of avoidance of bending, crouching, and crawling were supported both by plaintiff's treating physician's (Dr. Horak's) response to an interrogatory and medical reports and by plaintiff's own testimony. And the limitations on lifting to objects weighing no more than five pounds, as well as the sitting and standing limitations and the need to apply heat and ice were all supported by Dr. Horak's interrogatory response and plaintiff's testimony. In addition to Dr. Horak's and plaintiff's testimony in this regard, the ALJ considered testimony from a ME. While Dr. Horak was of the opinion plaintiff was disabled and would have trouble completing a workday, the ME testified that he did not think plaintiff's medical conditions met or equaled one of the disability listings in Appendix 1 to subpart P of 20 C.F.R. § 404 and that while he believed plaintiff experienced pain while standing that was residual from his surgeries, he did not believe it precluded plaintiff from working.

This court applies a deferential standard to the ALJ's weighing of the evidence about what to include in his RFC. *Clifford*, 227 F.3d at 869. The RFC states that plaintiff was capable of performing a "reduced range of sedentary exertional level work." "A claimant can do sedentary work if he can (1) sit up for approximately six hours of an eight-hour workday, (2) do occasional lifting of objects up to ten pounds, and (3) occasionally walk or stand for no more than about two hours of an eight-hour workday." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The RFC accurately described plaintiff as being able to do a "reduced range" of

sedentary work, indicating limitations not listed in the threshold definition of sedentary, including postural limitations, lifting limitations, the need to alternate sitting and standing, and plaintiff's need to ice his foot for an hour at a time. Social Security Ruling 96-9p provides that where an individual must alternate sitting and standing, "the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." The RFC finding that plaintiff alternate sitting and standing "as needed" is specific enough to satisfy SSR 96-9p. Therefore, the RFC was complete, included all plaintiff's limitations, and was adequately explained in the ALJ's opinion.

The ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." After making this credibility determination, the ALJ stated:

> The record along with the testimony of the medical expert at hearing indicate that although the claimant has limitations due to residuals of right foot pain, scar tissue, and recurrent neuroma based on multiple surgical interventions to correct problems with hammertoes, he is not precluded from performing substantial gainful work activity as determined above.

This was "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. Therefore, the ALJ's credibility determination will not be disturbed.

Turning to the ALJ's application of the RFC to vocational evidence, the court finds that the ALJ's conclusion that plaintiff could adjust to other work and thus was not disabled was supported by substantial evidence. First, the VE's testimony took into account all the limitations in plaintiff's RFC, as well as information about his age and educational background. While the ALJ did not include the bending restriction or the heating and icing needs in his initial

hypothetical, both were adequately explored during plaintiff's counsel's examination of the VE, so the ALJ could rely on the VE's testimony with respect to these limitations. *See Young*, 362 F.3d at 1003 ("where the hypothetical does not include all of the applicant's limitations, we must have some amount of evidence in the record indicating that the vocational expert knew the extent of the applicant's limitations"). Moreover, the first hypothetical posed by the ALJ included that "the hypothetical person can alternatively sit one hour, stand ten minutes for greater than six hours for an eight-hour day," specifically and accurately incorporating plaintiff's need to alternate sitting and standing.

" '*[B]efore* relying on [a vocational expert's] evidence to support a disability determination or decision,'" an ALJ must perform an inquiry into inconsistencies between a VE's testimony and the DOT, as required by SSR 00-4p. *Prochaska*, 454 F.3d at 735 (emphasis in original), *see* SSR 00-4p. See *Donahue*, 279 F.3d at 446. The ALJ asked about the DOT twice, once at the very outset of the VE's testimony, and again at the end of the VE's discussion of prior work immediately before the hypothetical questions were asked. Plaintiff's attorney had ample opportunity to raise questions about inconsistencies between the VE's testimony and the DOT, and did not do so at the hearing. The ALJ was therefore entitled to rely on the VE's testimony. *See Donahue*, 279 F.3d at 446.

The testimony of the VE fully supported the ALJ's findings. The full range of sedentary work as defined in SSR 96-9p requires:

> The ability to lift no more than ten pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from

> very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. Sitting would generally total about six hours of an eight-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

Plaintiff could not perform all the actions listed in this definition of sedentary work, but plaintiff could do a reduced range of sedentary work. The relevant reductions in plaintiff's abilities are: plaintiff can lift up to five pounds rather than ten, needs to alternate sitting and standing, needs to apply heat and ice to his foot, and is limited in his ability to bend. Each of these limitations which reduced the range of sedentary work plaintiff could perform was addressed in the VE's testimony, and, for every job the VE mentioned, the VE gave numbers of positions in the economy for someone able to do a full range of sedentary work, and then reduced that number to account for plaintiff's reduced abilities. The VE also described in detail how the jobs she listed would be within plaintiff's ability.

Finally, the ALJ specifically listed plaintiff's work limitations beyond those contained in the DOT's definition of sedentary work and described how they affected the number of jobs available to plaintiff. Therefore, the ALJ satisfied the requirements of SSR 00-4p. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires . . . remand [of] a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

Accordingly, the ALJ's decision was supported by substantial evidence and is therefore affirmed.

ORDERED: Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Pursuant to sentence four of 42 U.S.C. § 405(g), the decision

07 C 5661

of the Commissioner of Social Security is affirmed. Judgment will be set forth on a separate document and entered in the civil docket. Fed. R. Civ. P. 58, 79(a).

ENTER:

GEORGE W. LINDBERG
Senior U.S. District Judge

DATED: August 14, 2008